IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DARYL JEWELL, JR.,

      Plaintiff,

v.                              CASE NO. 2:07-cv-00088

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.


**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge. Although the court contacted Plaintiff's counsel about the filing of a brief in this matter, none has been filed.  Consequently, the Commissioner also has not filed a brief.

Plaintiff, Daryl Jewell, Jr. (hereinafter referred to as "Claimant"), filed an application for SSI on May 23, 2003, alleging disability as of May 3, 2003, due to depression and other mental impairments, breathing problems, headaches, back pain and injuries

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

sustained in a car accident, including broken ribs and a liver injury. (Tr. at 40-42, 49, 79.) The claim was denied initially and upon reconsideration. (Tr. at 32-33, 35.) On March 24, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 36.) The hearing was held on June 1, 2005, before the Honorable William H. Gitlow. (Tr. at 313-44.) By decision dated August 24, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-21.) The ALJ's decision became the final decision of the Commissioner on December 8, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 4-8.) On February 8, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2005). If an individual is found "not disabled" at any

step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2005).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v.

3

Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, borderline intellectual functioning and polysubstance abuse. (Tr. at 14-15.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15-16.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 18.) As a result, Claimant cannot return to his past relevant work. (Tr. at 18.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as bagger, stock handler, non-construction laborer, kitchen preparation worker, small parts assembler and hand finisher, which exist in significant numbers in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

4

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty years old at the time of the administrative hearing. (Tr. at 316.) Claimant completed the tenth grade. (Tr. at 323.) In the past, he worked as a construction laborer. (Tr. at 340.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On August 5, 2002, Claimant injured his left rib. Claimant

5

sustained a nondisplaced lateral left ninth rib fracture.  Claimant also was diagnosed with alcohol abuse and COPD.  (Tr. at 162, 165, 167.)

On August 17, 2002, Claimant was taken to the emergency room after taking pills and drinking alcohol.  He was diagnosed with alcohol and drug abuse.  (Tr. at 172-76.)

On March 5, 2003, Claimant reported to the emergency room after a fall.  Claimant sustained a right ear laceration.  Claimant was under the influence of alcohol.  (Tr. at 157, 159.)

On March 13, 2003, Claimant was admitted to the hospital after complaining of chest pain following a three day alcohol binge.  (Tr. at 138.)  He was diagnosed with atypical chest pain, chronic alcohol abuse and macrocytic anemia.  (Tr. at 139.)

On May 3, 2003, Claimant was involved in a motor vehicle accident.  He was a front seat passenger and was intoxicated.  Claimant sustained multiple soft tissue traumas, minimal grade 1 laceration of the left lobe of the liver on CT scan with no evidence of any bleeding, and alcohol intoxication plus other drugs in his blood.  (Tr. at 185.)  A head CT scan was negative.  Lumbar spine x-rays showed no bone or joint abnormality.  (Tr. at 197.)  Cervical spine x-rays showed no bone or joint abnormality.  Chest x-rays showed no acute cardiopulmonary disease.  (Tr. at 198.)

On August 12, 2003, Elizabeth Durham, M.A. examined Claimant at the request of the State disability determination service.

6

Claimant was sober at this examination, but reported drinking a six-pack twice a week and smoking marijuana once a week. Claimant reported that he had been arrested for public intoxication on six occasions and driving under the influence on two occasions. (Tr. at 213.) Ms. Durham diagnosed anxiety disorder, not otherwise specified and cannabis abuse on Axis I and borderline intellectual functioning on Axis II. (Tr. at 215.)

On August 15, 2003, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, reduced by an occasional ability to climb ladders, ropes and scaffolds and balance, and a need to avoid concentrated exposure to hazards. (Tr. at 217-23.)

On September 22, 2003, a State agency medical source completed a Mental Residual Functional Capacity Assessment and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods and perform activities within a schedule, and maintain regular attendance and be punctual within customary tolerances. (Tr. at 225-27.)

On September 22, 2003, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had borderline intellectual functioning, anxiety, and substance addiction. Claimant had a moderate restriction in activities of daily living, mild difficulties maintaining social functioning,

moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation.  (Tr. at 229-43.)

The record includes treatment notes from V. Somasundaram, M.D. On August 6, 2003, Claimant was diagnosed with chronic low blood pressure, radiculopathy, nodular testicular lesions, headache and anxiety.  (Tr. at 256.)  On September 24, 2003, Dr. Somasundaram diagnosed testicular lesions, atypical chest pain/pressure, chronic low back pain with radiculopathy and anxiety.  (Tr. at 249.)  On October 20, 2003, Claimant was diagnosed with "CLBP" and anxiety. He was prescribed Klonopin for the anxiety.  (Tr. at 244.) Claimant underwent a stress test on October 8, 2003, which was normal.  (Tr. at 245.)

On September 15, 2003, Claimant underwent a testicular ultrasound, which was suspicious for neoplastic process.  A biopsy was recommended.  (Tr. at 255.)

On January 30, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, reduced by a need to avoid concentrated exposure to extreme cold and vibration.  (Tr. at 263-70.)

On February 2, 2004, a State agency medical source completed a Mental Residual Functional Capacity Assessment and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions, and maintain

8

attention and concentration for extended periods.  (Tr. at 271-74.)

On February 2, 2004, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had borderline intellectual functioning, anxiety disorder, not otherwise specified, and substance addiction.  As a result, Claimant had moderate restriction in activities of daily living, marked difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation.  (Tr. at 275-88.)

An MRI of the cervical spine on February 20, 2004, showed left lateral herniated nucleus pulposis at the C6-7 level with encroachment causing moderate left neural foraminal stenosis. There was no evidence of herniated nucleus pulposus or spinal stenosis at any of the other levels studied.  (Tr. at 298.)  An MRI of the lumbar spine showed mild diffuse posterior disc bulge at the L5-S1 level.  There was no evidence of herniated nucleus pulposus or spinal stenosis.  (Tr. at 298-99.)  X-rays of Claimant's knees on March 23, 2005, were normal.  (Tr. at 294.)

On March 24, 2004, Dr. Somasundaram diagnosed COPD, chronic neck and back pain, low back pain, anxiety and dyspepsia.  (Tr. at 312.)  On May 19, 2004, and July 19, 2004, his diagnoses remained the same.  (Tr. at 310-11.)  On September 20, 2004, Dr. Somasundaram added the diagnoses of insomnia and GERD.  (Tr. at 309.)    On November 19, 2004, he diagnosed acute

9

sinusitis/bronchitis, GERD, chronic neck/low back pain and anxiety. (Tr. at 308.)  On January 19, 2005, the diagnoses remained the same.  (Tr. at 307.)  On March 21, 2005, Claimant had chest palpitations/tachycardia, COPD, chronic headaches, GERD, chronic low back pain, and generalized anxiety disorder.  (Tr. at 306.)  On May 23, 2005, Dr. Somasundaram diagnosed COPD, GERD, chronic low back pain, headache and generalized anxiety disorder.  (Tr. at 305.)

Claimant's Challenges to the Commissioner's Decision

    The court finds that the ALJ's decision is supported by substantial evidence.  In his decision, the ALJ determined that Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, borderline intellectual functioning and polysubstance abuse.  (Tr. at 14-15.)  This finding is supported by substantial evidence of record from treating, examining and nonexamining medical sources of record cite above.  In particular, the ALJ's determination that the above impairments are severe is supported by the evidence of record from Ms. Durham, an examining source, Dr. Somasundaram, Claimant's treating physician, and the non-examining State agency sources.

    The ALJ determined that several of Claimant's claimed impairments were not severe, including fractured ribs and a liver laceration from a May 2003, car accident.  Neither condition met

the duration requirement of 20 C.F.R. § 416.909 (2005).  The ALJ further determined that Claimant's chest pain was not severe, noting the normal stress test in March of 2005.  (Tr. at 14.)

The ALJ determined that Claimant's anxiety disorder was not a severe mental impairment.  The ALJ explained that Claimant had no history of "nerves" until June 2003, when he complained to his treating physician and was prescribed Klonopin.  The ALJ further stated that

> [a]lthough he was diagnosed with anxiety by the consultative examiner (3F), he was actively using alcohol and marijuana.  Therefore, I reject any diagnosis of anxiety disorder as there is no showing the claimant has had a significant period of sobriety necessary to meet his burden of proof to establish it is non-substance induced (see D[SM] IV at p 193).  I must find that as to Listing 12.06 the claimant has no medically determinable mental impairment.

(Tr. at 15.)

Later in his decision, the ALJ noted that when the limitations from the two Mental Residual Functional Capacity Assessments (Exhibit 5F and 9F, Tr. at 225-28, 271-74), which reflect a consideration of Claimant's polysubstance abuse, were included in the hypothetical question, the vocational expert responded that all the previous jobs identified would remain.  (Tr. at 19.)  The ALJ concluded that "[b]ased on the above persuasive vocational expert testimony relating to the alcohol impairments, the undersigned finds that the claimant's substance abuse is <u>not</u> material to a finding of disability."  (Tr. at 20.)

11

Under the Social Security Act, "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Amendment and the social security regulations set up a two-step analysis for determining this issue. Briefly, the ALJ first must determine whether the claimant is disabled. See 20 C.F.R. § 416.935(a) (2005). If the ALJ does conclude that the claimant is disabled, he or she must then ask whether alcoholism or drug addiction is a contributing factor to claimant's disability. Id. Alcoholism or drug addiction is a contributing factor if the claimant would not be disabled if he or she stopped using alcohol or drugs. See 20 C.F.R. § 416.935(b)(1) (2005).

An August 30, 1996, memorandum to various departments within the Social Security Administration ("SSA") stated that SSA policy mandates a finding of not material where "it is not possible to separate the mental restrictions and limitations imposed by [drug or alcohol abuse] and the various other mental disorders shown by the evidence ...." Cox, Dale, Social Security Administration, Emergency Teletype, August 30, 1996, Response to Question Number 29 (found at www.ssas.com under Public Files, DAA Q&A Teletype – 8/30/96 Emergency Teletype).

The ALJ's determination that Claimant's anxiety is not a severe mental impairment because Claimant has not had a significant

12

period of sobriety necessary to establish the presence of this impairment independent of his abuse of alcohol and drugs is supported by substantial evidence.  The medical evidence of record indicates multiple hospitalizations for alcohol and drug-related issues.  Although Claimant testified at the administrative hearing in June of 2005, that he stopped drinking two to three years ago (Tr. at 321), Claimant told Ms. Durham on August 7, 2003, that he drinks a six-pack twice a week and smokes marijuana once a week. (Tr. at 213.)  Notably, she diagnosed cannabis abuse on Axis I. (Tr. at 215.)  All of the State agency non-examining sources note the presence of substance addiction (12.09 of the Listings).  (Tr. at 225, 237, 271, 283.)  In short, the ALJ's determination that Claimant's anxiety is not a severe mental impairment because Claimant has not had a significant period of sobriety necessary to show that he suffers from anxiety independent of alcohol and drug abuse is reasonable and supported by the substantial evidence of record indicating Claimant has an ongoing substance abuse problem.

The ALJ's determination that Claimant's substance abuse is not material to a finding of disability also is supported by substantial evidence.  When the limitations from the State agency sources (Exhibits 5F and 9F), which took into account Claimant's drug and alcohol use, were included in the hypothetical question, the vocational expert was still able to identify the same jobs.

13

(Tr. at 342.)    The ALJ's determination in this regard also is supported by substantial evidence.

The ALJ's residual functional capacity finding is supported by substantial evidence.    The ALJ found that Claimant's residual functional capacity was limited to medium level work, reduced by occasional climbing and balancing, a need to avoid work at unprotected heights, around dangerous, moving machinery or cold temperatures and an ability to perform simple, two-step tasks with limited contact with others.    (Tr. at 18.)    The ALJ's residual functional capacity finding adequately reflects the limitations caused by Claimant's severe impairments.    When these limitations were included in the hypothetical question, the vocational expert identified a significant number of jobs Claimant could perform. (Tr. at 340-42.)

Finally, the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 416.929(b) (2005); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).    The ALJ determined that Claimant has underlying impairments that may reasonably result in the symptoms alleged.    (Tr. at 16.)    The ALJ proceeded to the second step in the analysis, and considered Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors

14

and Claimant's medication.  (Tr. at 17–18.)

The ALJ noted Claimant's testimony about his neck and back pain, including the nature, frequency and duration.  In addition, he noted that Claimant does not use a TENS unit and has not participated in physical therapy.  He noted that activity aggravates Claimant's back and neck pain.  In addition, the ALJ noted that Claimant does not want surgery, but that he takes Lortab, which eases his pain and does not cause side effects.  The ALJ observed that even with Claimant's neck and back pain, he can lift two gallons of milk, walk 75 yards and stand or sit for fifteen to twenty minutes.  (Tr. at 17.)

Furthermore, as is required by Social Security Ruling ("SSR") 96-8p, the ALJ considered the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 WL 362207, *34477 (July 2, 1996).  Specifically, the ALJ also considered Claimant's complaints related to Claimant's nonsevere impairments, including knee pain, breathing problems and anxiety.  (Tr. at 17.)

The ALJ considered Claimant's daily activities, including that he cares for his own personal hygiene and bathes and dresses himself.  He noted that Claimant reported staying in bed all day and smoking one pack of cigarettes per day.  Claimant does not cook, wash dishes, sweep, vacuum, shop or make the bed.  Claimant does not attend church or visit with anyone.  He has no hobbies and

15

claims that he does not drink.  (Tr. at 17.)

The ALJ found Claimant's credibility to be "not good."  (Tr. at 18.)  The ALJ provided six reasons for this finding.  The ALJ noted inconsistencies in the record regarding Claimant's weight and use of cigarettes.  In addition, he noted that "[i]n March 2003, the claimant reported he had not been treated by any doctor for any medical complaints and was taking no prescription medication, defying his complaint at the hearing that he had been suffering from back pain for five years and neck pain for three years (1F)."  (Tr. at 18.)  In addition, the ALJ reasoned that "[a]lthough he testified his back pain is his biggest problem, he did not complain of back pain to the consultative examiner in August 2003 (3F)."  (Tr. at 18.)  The ALJ made the following finding regarding Claimant's drug and alcohol use:

> [t]he claimant presented with misleading and inconsistent testimony concerning the claimant's substance abuse.  He alleged starting drinking at age 17-18; however the record indicates he started at age 8 (1F).  He testified to a history of no other substance abuse.  However, a drug screen performed at a hospitalization in May of 2003 after a motor vehicle accident (with a BAL of 143) was positive for opiates, THC and barbiturates (Exhibit 2F at p20).  Nor was the claimant any more consistent within the records.  To his treating doctor in June 2003 he drank alcohol occasionally (7F).  In August 2003 he had a BAL of 143 (2F).  In August 2003 he admitted to drinking 1/2 a case per week, with a history of 2 DUI's and 6PI's (3F).

(Tr. at 18.)  Finally, the ALJ noted Claimant's testimony of a "vegetative lifestyle, with no Activities of Daily Living and staying in bed all day secondary to pain.  However, an October 2003

16

graded exercise test was not only negative but reflected an average exercise tolerance (exhibit 7F)."  (Tr. at 18.)

The ALJ's findings regarding the credibility of Claimant's subjective complaints are well reasoned and supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 7, 2008

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

17